**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| ERIC ARCHIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **CIVIL ACTION NO. 12-046-CG-M** |
| | ) | |
| FRANK COCKRELL BODY SHOP, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the court on defendant's motion for summary judgment (Doc. 34), defendant's opposition thereto (Doc. 38), defendant's reply (Doc. 39), defendant's motion to strike plaintiff's opposition (Doc. 40), plaintiff's response to the motion to strike (Doc. 41), plaintiff's motion for the court to treat his opposition as timely (Doc. 42), defendant's response to the motion for timeliness (Doc. 43), and plaintiff's reply regarding his motion for timeliness (Doc. 44).  For the reasons explained below, the court finds that defendant's motion to strike should be denied and that plaintiff's motion to treat his opposition as timely should be granted. However, the court finds that plaintiff has not shown that defendant's proffered legitimate, non-discriminatory reason for terminating plaintiff is merely pretext. Accordingly, defendant's motion for summary judgment is due to be granted.

## FACTS

This case arises from plaintiff's termination from the defendant company, Frank Cockrell Body Shop, Inc. ("Cockrell's") after an incident that occurred in July 2011.   Plaintiff asserts that he was discriminated against on the basis of race in violation of both Title VII and 42 U.S.C. § 1981.  The plaintiff, Eric Archie, worked for Cockrell's as a "detail man" – inspecting, untaping and prepping cars – until the incident made the basis of this suit. (Doc. 34-2, p. 5; Doc. 38-6, ¶ 1).  According to plaintiff, he was treated fairly up until that time and even received a promotion and pay raise three months prior to the incident. (Doc. 34-2, pp. Doc. 38-6, ¶¶ 2, 3).

In July 2011, plaintiff had an altercation with another employee, Nick Edwards. (Doc. 38-6, ¶ 20).  Plaintiff and Edwards are both African-American. (Doc. 38-6, ¶ 21).  The altercation was witnessed by another employee, Ronald Crawford, who is also African-American. (Doc. 38-6, ¶¶ 20, 21).  After the incident, Crawford reported to a manager, Paige Howell, that he and plaintiff had gone into a paint room – where Edwards was working on a vehicle – to smoke marijuana. (Doc. 34-1, p. 18; Doc. 38-6, ¶¶ 8, 22).  Crawford reported that they had shut the door to the room and Edwards got mad. (Doc. 34-1, p. 18).  Crawford reported that the plaintiff and Edwards cussed each other and the plaintiff choked Edwards and that Crawford had to pull plaintiff off of Edwards. (Doc. 34-1, p. 18). According to Crawford and Edwards, the plaintiff grabbed Edwards and laid him on the hood of

2

the car and was choking him. (Doc. 34-4, p. 7; Doc. 34-5, p. 5).  The plaintiff admits that he grabbed Edwards around the neck with both hands for a few seconds, but plaintiff claims it was in self defense – that Edwards ran towards plaintiff and plaintiff stuck his hand out to defend himself and pushed him back onto the hood of the car. (Doc. 38-6, ¶ 27; Doc. 34-2, pp. 11, 13-14).

Immediately after the incident, Edwards went to Ms. Howell's office and reported what had happened. (Doc. 34-1, p. 2).  Plaintiff clocked out, left the building, got in his vehicle and reports that he called Ms. Howell from the parking lot. (Doc. 34-2, pp. 11-12, 15).  Plaintiff states that he called and asked Howell if he still had a job and was told to call back later. (Doc. 34-2, p. 16).  According to plaintiff, he received a call from Howell a couple hours later and was told he was fired for putting his hands on another employee. (Doc. 34-2, p. 16).  Plaintiff says Howell asked him why he did it and he told her "I defended myself." (Doc. 34-2, pp. 16-17).  When plaintiff applied for unemployment benefits, his application was denied because he had been discharged "for fighting on the job." (Doc. 38-5).

Plaintiff claims that white employees were treated differently after a similar incident that occurred earlier in the year.  The prior incident involved an altercation between two Caucasians, Wesley Clements and Frank Cooley. (Doc. 38-6, ¶ 6).  According to Cooley, the incident consisted of he and Clements getting into an argument which culminated in Cooley pushing Clements and walking off. (Doc. 34-

3, pp. 2-3).  Plaintiff witnessed the incident and according to plaintiff's testimony

now, Cooley hit Clements in the face and then walked off. (Doc. 38-2, p. 8).

Clements also reports that Cooley hit him in the face. (Doc. 38-7, ¶ 3).  There were

other witnesses to the incident. (Doc. 34-1, pp. 8-9).  Another employee, Russell

Adcock, reported that Cooley and Clements argued, but that Cooley was walking

away when Clements commented something else and got in Cooley's face and

Cooley shoved Clements out of his face. (Doc. 34-1, p. 9).  Plaintiff reports that after

the incident Ms. Howell came in looking for Clements and was worried that Cooley

was going to get his gun and kill Clements. (Doc. 38-2, p. 10).

   After the incident, Howell spoke to both Clements and Cooley about what had

occurred. (Doc. 34-1, p. 6; Doc. 38-6, ¶ 9).  Ms. Howell believed that both parties

were at fault for the confrontation and considered them both to be good employees.

(Doc. 34-1, p. 15).  Ms. Howell reports that she sent both Clements and Cooley home

for a full week. (Doc. 34-1, pp. 10, 15).  Ms. Howell decided the two should not work

together and that Clements would be relocated, as the only opening they had

available was a "detail" position at their Theodore, Alabama location. (Doc. 34-1, p.

12, 13, 16; Doc. 38-3, pp. 3-4).  But, Ms. Howell reports that Clements turned her

down because the facility was too far for him to drive. (Doc. 34-1, p. 13).  Cooley was

a "body man" and they did not have an open position anywhere for him. (Doc. 34-1,

p. 16).  Clements reports that he had not been called back into work yet, when he

4

discovered that Cooley was back to work a little less than a week after the incident. (Doc. 38-7, ¶¶ 7, 8, 9).  About two weeks after the incident, Howell called Clements and offered him a position at another location, but Clements reports that he had already started working somewhere else. (Doc. 38-7, ¶ 9).

## DISCUSSION

### I. Timeliness of Plaintiff's Opposition

Defendant moves to strike plaintiff's opposition as untimely and plaintiff moves for the court to treat his motion as timely.  This court previously granted plaintiff an extension until April 29, 2013 to file his response to summary judgment. (Doc. 37).  Plaintiff did not file his response until April 30, 2013.  Plaintiff reportedly attempted to file his response beginning around 10:30 on the night of April 29, but was unable to file the response due to the court's electronic filing system being out.  The court's electronic filing system was out for approximately 13 hours beginning shortly before 7:00 p.m. on April 29 due to an AT&T outage in the downtown Mobile area. (Doc. 44-1, ¶ 1).  While defendant asserts that plaintiff should not have waited until the last minute to file, the court finds it appropriate under the circumstances to grant plaintiff's motion to treat the response as timely.

Defendant cites Weatherly v. Ala. State Univ., 2012 WL 2998316 at *1 (M.D. Ala. 2012) for the proposition that courts in Alabama have stricken untimely filings where counsel waited until the last minute to file and technical difficulties

5

prevented timely filing.  However, in <u>Weatherly</u>, counsel had attempted to file only three or four minutes before midnight when counsel encountered technical difficulties and there was no suggestion that the court's filing system was down for any period of time.  In the instant case, plaintiff's counsel attempted to file his response with plenty of leeway to deal with any minor technical problems he might anticipate could arise and it was only because of the malfunctioning of the filing system at the court's end that he was unable to do so.  Furthermore, the filing in <u>Weatherly</u> was a renewed motion for judgment as a matter of law under Rules 50 and 59 which have a 28-day time limit that may not be extended by the court. <u>Id.</u> at *2 (citing Fed. R. Civ. P. 6(b)(2) and <u>Cavaliere v. Allstate Ins. Co.</u>, 996 F.2d 111, 113 (11th Cir.1993)).  The court is not prohibited from extending response times for summary judgment motions, such as is at issue here.  Accordingly, plaintiff's motion for the court to treat his opposition as timely (Doc. 42), is **GRANTED**.  Additionally defendant's motion to strike (Doc. 40) is **DENIED** in part to the extent that it seeks for the court to strike plaintiff's response as untimely (the remainder of defendant's motion to strike is discussed below).

## II. Motion to Strike Plaintiff's Supporting Documents

Defendant moves to strike several exhibits plaintiff filed in support of his opposition to summary judgment.  The court notes that most of the information contained in the exhibits is also contained in the deposition testimony submitted by

the parties.  Moreover, for reasons that will be explained below, the court finds that even after considering the documents, that defendant's motion for summary judgment is due to be granted.  Accordingly, the court finds that defendant's motion to strike plaintiff's exhibits is **MOOT.**  Thus defendant's motion to strike (Doc. 40) is **DENIED** in its entirety.

### III. Merits of Summary Judgment Motion

#### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).   "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The

8

non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Plaintiff's Claims**

Plaintiff asserts that he was discriminated against on the basis of race in violation of both Title VII and 42 U.S.C. § 1981.  Title VII prohibits an employer from discriminating against a person based on race. 42 U.S.C. §2000e-2(a)(1).  Likewise, 42 U.S.C. §1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts.  See, e.g., Johnson v. Railway Express Agency, 421 U.S. 454 (1975) (holding unequivocally that §1981 protects against racial discrimination in private employment).  A plaintiff may prove discrimination by relying on either direct, circumstantial, or statistical evidence.  See

9

Walker v. Nationsbank of Florida N.A., 53 F.3d 1548, 1555 (11th Cir. 1995).  Direct

evidence is evidence which, "if believed, proves the existence of discriminatory motive

'without inference or presumption'" Hamilton v. Montgomery County Bd. of Educ., 122

F.Supp.2d 1273, 1279 (M.D. Ala. 2000) (quoting Carter v. Three Springs Residential

Treatment, 132 F.3d 635, 641 (11th Cir. 1998)).  As the U.S. District Court for the

Middle District of Alabama explained:

> Not only must it be evidence of discriminatory 'actions or statements of
> an employer' but the actions or statements at issue must 'correlate to the
> discrimination or retaliation complained of by the employee.' Further, the
> statements 'must be made by a person involved in the challenged
> decision' and must not be subject to varying reasonable interpretations.

Id. (quoting Lane v. Ogden Entertainment, Inc., 13 F.Supp.2d 1261, 1274 (M.D. Ala.

1998)).   Plaintiff has submitted no direct evidence of discrimination or retaliation.

None of the evidence offered proves without inference or presumption that the person

who made the employment decisions did so based on plaintiff's race.  Plaintiff has also

not attempted to show discrimination through statistical evidence, but relies instead

on circumstantial evidence.

A plaintiff may attempt to show discrimination based on circumstantial

evidence through the application of the McDonnell Douglas burden-shifting analysis

established by the Supreme Court. McDonnell Douglas Corp. v. Green, 411 U.S. 792

(1973).  Under the McDonnell Douglas framework, a plaintiff must first raise an

inference of discrimination by establishing a prima facie case. See Chapman v. AI

10

Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing Combs v. Plantation Patterns,

106 F.3d 1519, 1527-28 (11th Cir. 1997)).

> In order to make out a prima facie case of discrimination, a plaintiff
> must show:
> (1) [ ]he is a member of a protected class; (2) [ ]he suffered an adverse job
> action; (3) h[is] employer treated similarly situated employees outside
> h[is] classification more favorably; and (4) [ ]he was qualified to do the
> job.

Barnes v. Crowne Investments, Inc., 391 F.Supp.2d 1108, 1115 (S.D. Ala. 2005)

(citations omitted).

The first prong is satisfied as it is undisputed that plaintiff is a member of a

protected class.   It is also undisputed that plaintiff was qualified to do the job.

However, defendant disputes the second and third prong, that he suffered an adverse

job action and that similarly situated employees outside his classification were treated

more favorably.  As to the second prong, the court finds there is ample evidence that

plaintiff suffered an adverse job action.  Although defendant contends that Ms. Howell

simply assumed plaintiff quit since he clocked out and left after the fight, there is also

evidence that Ms. Howell called plaintiff to tell him he was fired.  As such, the court

finds the second prong of a prima facie case has been met.

As to the third prong, plaintiff asserts that two white employees, Frank Cooley

and Wesley Clements were treated differently after they had an altercation at work.

After the altercation, both of the white employees were suspended for about a week

and Clements was transferred or offered a position at another location.  The court

agrees that being terminated is a harsher discipline than a one week suspension and being transferred.  However, defendant asserts that the two situations are not comparable because the altercations and the reasons for the discipline were not the same or nearly identical.

To be appropriate comparators, the employees must be "similarly situated in all aspects." Holifield v. Reno, 115 F.3d 1555, 1563 (11th Cir. 1997).  "[T]he individuals must be similarly situated in all relevant respects besides race, since different treatment of dissimilarly situated persons does not violate civil rights laws." Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1273-1274 (11th Cir. 2004) (internal citations and quotation omitted).  "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Holifield, 115 F.3d at 1562 (citing Williams v. Ford Motor Co., 14 F.3d 1305, 1309 (8th Cir.1994)).

In the instant case, defendant argues that the circumstances and severity of the prior altercation between two non-minority employees and plaintiff's altercation are not comparable.  Defendant asserts that the prior altercation involved only a push, where as the plaintiff's altercation involved the plaintiff choking a fellow employee. Defendant further contends that plaintiff was considered to have left the workplace after the altercation without permission in violation of company policy.

12

Plaintiff, citing <u>Alexander v. Fulton County</u>, 207 F.3d 1303 (11th Cir. 2000) and

<u>Anderson v WBMG-42</u>, 253 F.3d 561 (11th Cir. 2001), contends that the misconduct

complained of does not have to be the same or nearly identical, but only similar.

However, the Eleventh Circuit has expressly set aside cases that held that only

similar, rather than "nearly identical" conduct must be proved. <u>See</u> <u>Stone & Webster</u>

<u>Const., Inc. v. U.S. Dept. of Labor</u>, 684 F.3d 1127, 1135 (11th Cir. 2012) (citing <u>Silvera</u>

<u>v. Orange Cnty. Sch. Bd.</u>, 244 F.3d 1253, 1259 (11th Cir. 2001) (holding that a

"comparator's misconduct must be nearly identical to the plaintiff's") and <u>Burke–</u>

<u>Fowler v. Orange Cnty., Fla.</u>, 447 F.3d 1319, 1323 n. 2 (11th Cir. 2006) (per curium)

(holding that "we are bound to follow <u>Maniccia</u>'s[1] 'nearly identical' standard rather

than the standard articulated in <u>Alexander</u> because when a later panel decision

contradicts an earlier one, the earlier panel decision controls.") <u>see</u> <u>also</u> <u>Phillips v.</u>

<u>McHugh</u>, 2013 WL 2257121, *1 (11th Cir. May 23, 2013) ("We require that the quantity

and quality of the comparator's misconduct be nearly identical to prevent courts from

second-guessing employers' reasonable decisions ...." quoting <u>Maniccia</u>); <u>Foster v.</u>

<u>BioLife Plasma Services, LP</u>, 2013 WL 3864338, *12 (N.D. Ala. July 24, 2013) ("Both

the 'quantity and the quality of the comparator's misconduct must be nearly identical

---

[1] <u>Maniccia v. Brown</u>, 171 F.3d 1364, 1368 (11th Cir. 1999) ("We require that the
quantity and quality of the comparator's misconduct be nearly identical to prevent
courts from second-guessing employers' reasonable decisions and confusing apples
with oranges.")

to prevent courts from second-guessing employer's reasonable decisions and confusing apples and oranges.'" quoting <u>Maniccia</u>); <u>but</u> <u>see</u> <u>King v. Piggly Wiggly Alabama Distribution Co., Inc.</u>, --- F.Supp.2d ---, 2013 WL 839869, *6 (N.D. Ala. March 1, 2013) (recognizing the disagreement and concluding that "within the Eleventh Circuit (and if and until the Supreme Court or the Eleventh Circuit en banc holds otherwise), the misconduct engaged in does not have to be identical or even nearly identical in order for another employee to be a valid comparator." footnote omitted)).  This court agrees that the current standard in the Eleventh Circuit requires that the "quantity and the quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employer's reasonable decisions and confusing apples and oranges." <u>Maniccia</u>, 171 F.3d at 1368.

Plaintiff believes that defendant has mischaracterized the nature of both the prior altercation and the altercation between Plaintiff and Edwards.  According to plaintiff, the prior altercation involved more than a push.  Both plaintiff and Clements report that Cooley hit Clements in the face and then walked off.  Ms. Howell apparently believed the incident was serious enough that the two should not work at the same facility.  Plaintiff also reports that after the incident Ms. Howell was worried that Cooley had left to get his gun and kill Clements.  If this statement is believed, then clearly immediately after the incident between Clements and Cooley, Ms. Howell thought the situation might have been very serious.

Plaintiff also describes his altercation differently, contending that he merely acted in self-defense when Edwards ran towards plaintiff.  According to both Edwards and a witness, plaintiff choked Edwards and plaintiff had to be pulled off of Edwards.  However, according to plaintiff, he grabbed Edwards around the neck with both hands for a few seconds and then pushed him back onto the hood of the car in self-defense.  Plaintiff, by all accounts, then clocked out and left the facility.  There is some dispute over where plaintiff ran to and how long he waited before calling in, but looking at the facts in the light most favorable to plaintiff, the court must assume that plaintiff simply went to his car and called Ms. Howell from there.

Defendant asserts that plaintiff was considered to have left the workplace without permission in violation of company policy.  While the fact that he ran out immediately following the altercation may have added to the perceived seriousness of the incident, the fact that he violated a company policy by doing so does not appear to have been a reason relied on by Ms. Howell when she decided to terminate plaintiff.  Similarly, the fact that it was reported to Ms. Howell, that the incident started when plaintiff went into the paint room to smoke marijuana, also adds to the circumstances surrounding the altercation, but plaintiff's alleged marijuana use at work, while presumably a legitimate reason by itself for terminating plaintiff, was not apparently relied upon by Ms. Howell.

15

Looking at the two incidents in the light most favorable to plaintiff, the court cannot say that they are not nearly identical in the quantity and the quality of the comparators' actual misconduct.[2]  While it is hard to directly compare the two incidents, they both consist of arguments and brief physical fights between two employees at work.  Although there is evidence that plaintiff's confrontation may have been more serious, looking at the evidence in the light most favorable to plaintiff, his conduct consisted merely of plaintiff putting up his hands and pushing Edwards back when Edwards charged at plaintiff.  Since there are two witnesses that claim that the prior incident between the white employees involved one punching the other in the face and then running off, the court finds for the purpose of this summary judgment motion that a prima facie case has been met.

Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant, who must "proffer a legitimate, non-discriminatory reason for the adverse employment action.  The employer's burden is exceedingly light."

---

[2] The court notes that what actually happened may be irrelevant towards the ultimate burden of persuasion, since generally only what the employer knew or understood to have occurred can reveal the reasons behind the employer's actions. See Hudson v. Blue Cross Blue Shield of Alabama, 431 Fed.Appx. 868, 869 (11th Cir. 2011) ("[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." citing  Damon v. Fleming Supermarkets of Florida, 196 F.3d 1354, 1363 n. 3 (11th Cir.1999)); see also Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984) ("employer may fire an an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason" emphasis added).

16

Hamilton, 122 F.Supp.2d at 1280 (quoting Meeks v. Computer Assoc. Int'l, 15 F.3d

1013, 1021 (11th Cir. 1994) (internal quotations omitted)).  In the instant case,

defendant asserts that plaintiff was terminated because he got in a fight at work and

attempted to choke another employee.  There is varying evidence regarding whether

plaintiff actually tried to strangle Edwards or just put his hands on Edwards' neck in

self-defense.  However, the evidence is clear that plaintiff was involved in an

altercation and that it was reported to the manager that plaintiff choked Edwards and

that another employee had to pull plaintiff off of Edwards.  The proffered reason is

clearly a legitimate non-discriminatory reason for terminating plaintiff.

Once the defendant proffers a legitimate reason for the employment decision,

the burden then shifts back to plaintiff, who must show that the employer's proffered

reasons are pretextual, or merely a cover for discrimination. Id.  "At the pretext stage,

in order to survive summary judgment, Plaintiff[s] must provide sufficient evidence to

allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons

were not actually the motivation for the employer's decision." Miller v. Bed, Bath &

Beyond, Inc., 185 F.Supp.2d 1253, 1270 (N.D. Ala. 2002) (citing Combs, 106 F.3d at

1538).  Plaintiff may do this  "(1) by showing that the employer's legitimate

nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all

of the evidence, a discriminatory reason more likely motivated the decision." Id.

(citations omitted).  "This is done by pointing to 'such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence.'" Hamilton, 122 F. Supp.2d at 1281 (quoting Combs, 106 F.3d at 1539).  The ultimate burden of persuasion remains with the plaintiff at all times in cases involving merely circumstantial evidence. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Plaintiff contends that Mr. Cooley's conduct in the prior incident may have been more serious than plaintiff's conduct, yet Mr. Cooley was merely suspended for one week.  However, it was reported to Ms. Howell that plaintiff choked Edwards and that another employee had to pull plaintiff off of Edwards.  The circumstances surrounding the altercation as reported to Ms. Howell, were that plaintiff had gone into the paint room to smoke marijuana when he got into an argument with Edwards and that plaintiff ran off and left the facility after he was pulled off of Edwards.  As reported to Ms. Howell, the incident was very serious.  While there is evidence that Ms. Howell also believed the prior incident was serious at least immediately following the incident, there are more culpable circumstances surrounding plaintiff's confrontation.  Additionally, there were multiple witnesses to the confrontation between Cooley and Clements that described the physical contact as merely a push or a shove, whereas the descriptions reported to Howell about plaintiff's confrontation were that plaintiff choked Edwards and had to be pulled off.  Plaintiff denies that his confrontation

18

happened as reported and says he told Ms. Howell that he did it in self-defense, but
that was not until Ms. Howell called to inform plaintiff he was fired.  At that time,
Howell had heard more than one person describe the confrontation as plaintiff having
choked Edwards and she had made the decision to terminate plaintiff.  The court does
not find it to have been unreasonable for Ms. Howell not to have changed her decision
at that time merely because plaintiff stated that "I defended myself" while not
specifically denying the alleged conduct.  Moreover, a mistake in fact does not show
pretext.  See Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253 (11th Cir.2000) (providing that
"[a] plaintiff must show not merely that the defendant's employment decisions were
mistaken, but that they were in fact motivated by [the protected characteristic]");
Alexander v. Fulton County, Ga., 207 F.3d 1303, 1339 (11th Cir.2000) (holding that
"[a] plaintiff must show not merely that the defendant's employment decisions were
mistaken but that they were in fact motivated by race.") overruled on other grounds,
Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003).

It should be noted that federal courts "do not sit as a super-personnel
department that reexamines an entity's business decisions." Chapman, 229 F.3d at
1030 (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)).  It
is not appropriate for either the plaintiff or this court to "recast an employer's
proffered non-discriminatory reasons or substitute his business judgment for that of
the employer." Chapman, 229 F.3d at 1030.  "[W]hether an employment decision was

prudent or fair is irrelevant. <u>Hudson v. Blue Cross Blue Shield of Alabama</u>, 431 Fed.Appx. 868, 869 (11ᵗʰ Cir. 2011) (citing <u>Rojas v. Florida</u>, 285 F.3d 1339, 1342 (11th Cir.2002) and <u>Elrod v. Sears, Roebuck and Co.</u>, 939 F.2d 1466, 1470 (11th Cir.1991) (noting courts do not reexamine an employer's business judgment and that the key inquiry is "whether the employer gave an honest explanation of its behavior")).

The court notes that no action was taken against Edwards, who is also a black employee.  This supports a finding that defendant was not biased against black employees, but honestly believed that plaintiff was the aggressor in the confrontation. Additionally, by all accounts, defendant treated plaintiff well over the course of his employment.

After reviewing all of the evidence, the court finds that plaintiff has not shown that defendant's proffered legitimate reason for its decision to terminate plaintiff is merely pretext.

## <u>CONCLUSION</u>

For the reasons stated above, defendant's motion for summary judgment (Doc. 34) is **GRANTED**.

**DONE and ORDERED** this 9ᵗʰ day of August, 2013.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE
